UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ATLANTIC MARINE FLORIDA, LLC,
as successor in interest to Atlantic
Marine, Inc., and AMERICAN HOME
ASSURANCE COMPANY, as
Subrogated Underwriter,

      Plaintiffs,

v.                                            CASE NO.  3:08-cv-538-J-20JBT

EVANSTON INSURANCE
COMPANY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant Evanston Insurance Company's ("Defendant") Motion for Attorney Fees under Section 768.79, Florida Statutes and Request for Evidentiary Hearing ("Motion") (Doc. 207), Plaintiffs' Response thereto (Doc. 214), Defendant's Reply (Doc. 217), and the arguments and evidence presented by the parties at the hearing held before the undersigned

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

on October 14, 2015. For the reasons discussed herein, the undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED in part** and that judgment be entered in favor of Defendant and against Plaintiffs in the total amount of $209,731.48, representing $207,468.16 in attorney's fees and $2,263.32 in costs.

## I. Summary of Recommendation

Defendant requests that the Court enter an award of fees in the amount of $324,169.00 and costs in the amount of $4,624.60.[2] Plaintiffs concede that Defendant is entitled to fees, but argue that the fees must be reduced both under the lodestar standard and under the statutory factors set forth in Fla. Stat. § 768.79(7)(b). Plaintiffs suggest an attorney's fee award of $75,000 is appropriate.[3] (Doc. 214 at 10, 23.) Plaintiffs also argue that many of the costs Defendant requests are not permitted by 28 U.S.C. § 1920. (*Id.* at 4–5.) The undersigned recommends that the number of hours Defendant claims is excessive, and that this number should be reduced by twenty percent. In addition, the fees sought should be further reduced by twenty percent based on the factors set forth in Fla. Stat. §

---

[2] The Motion actually requests $328,394.00 in attorney's fees (Doc. 207 at 14), but at the hearing counsel for Defendant stated that the correct total amount of requested attorney's fees is $324,169.00.

[3] Plaintiffs argue that, based on their review of Defendant's billing records, the lodestar amount should be reduced to $173,000. (Doc. 214 at 3.) Plaintiffs argue that this amount should be reduced by $21,968 to account for Defendant's initial, unsuccessful appeal. (*Id.* at 8.) Finally, Plaintiffs argue that this adjusted amount should be reduced by approximately fifty percent under the Fla. Stat. § 768.79(7)(b) factors. (*Id.* at 10.) (($173,000-$21,968) x 0.50 = $75,516.)

2

768.79(7)(b). Therefore, Defendant's requested attorney's fees should be reduced to $207,468.16. The undersigned also recommends that Defendant is entitled to recover only $2,263.32 in costs.

## II. Background[4]

On May 28, 2008, Plaintiffs filed a declaratory judgment action seeking a determination that Plaintiff Atlantic Marine, Inc. ("AMI") was covered under an insurance policy issued by Defendant. (Doc. 1.) Plaintiffs alleged that as a result of Defendant's breach of contractual obligations to defend and indemnify AMI, AMI paid $325,000 to settle certain litigation and incurred about $250,000 in costs and fees. (*Id.* at 14.) On November 7, 2008, Defendant served proposals for settlement under Fla. Stat. § 768.79 and Fla. R. Civ. P. 1.442 to each Plaintiff. (Doc. 207 at 3–4.) Each proposal was in the amount of $2,500. (*Id.* at 4.) Neither Plaintiff accepted. (*Id.*)

On June 22, 2010, the Court granted Plaintiffs' motion for summary judgment against Defendant, finding that AMI was a beneficiary under the policy. (Doc. 88.) The Court denied Plaintiffs' motion for summary judgment against Defendant Hartford Casualty Insurance Company ("Hartford").[5] (*Id.*) On June 23, 2010, judgment was entered in Plaintiffs' favor against Defendant in the amount of

---

[4] Given the extensive history of this case, the undersigned has included only the most relevant background facts.

[5] Hartford is an insurer and was also a named Defendant in this action. (*See* Doc. 1.)

$325,000. (Doc. 89.) On July 7, 2010, Plaintiffs moved for attorney's fees. (Doc. 90.) On July 15, 2010, Plaintiffs appealed that portion of the Court's summary judgment order, and the consequent judgment, in favor of Hartford.[6] (Doc. 95.) Defendant filed a notice of appeal on July 23, 2010 (Doc. 98), which the Eleventh Circuit eventually dismissed because there was not yet a final, appealable order regarding Defendant (Doc. 114). On March 21, 2013, an amended judgment was entered in Plaintiffs' favor against Defendant in the amount of $622,131.32. (Doc. 188.) Both sides appealed this judgment. (Docs. 189 & 190.) The Eleventh Circuit reversed the judgment of this Court, and directed entry of judgment for Defendant. (Doc. 193.) Consideration of Defendant's attorney's fees was transferred to this Court. (Doc. 194.)

### III.   Legal Principles

In applying Florida substantive law, this Court follows the rulings of the Florida Supreme Court. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011). Where the Florida Supreme Court has not spoken, the Court must, as a general matter, follow the decisions of the Florida District Courts of Appeal. *Id.*

Regarding entitlement to fees, Fla. Stat. § 768.79 provides in relevant part:

> (1) In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs

---

[6] Plaintiffs subsequently settled with Hartford and moved to dismiss their appeal as to the portion of the order pertaining to Hartford. (*See* Doc. 113.)

4

> and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability. . . .
>
> (7)(a) If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees.

"If an offer satisfies the requirements of [Fla. Stat.] § 768.79(1)-(6), . . . [t]he sole basis on which a court can disallow an entitlement to an award of fees is if it determines that [the] offer was not made in good faith." *McMahan v. Toto*, 311 F.3d 1077, 1083 (11th Cir. 2002) (quotations omitted). "[T]he burden is upon the offeree to prove that the offeror acted without good faith." *Id.* (quotations omitted).

Regarding the amount of fees, Fla. Stat. § 768.79 provides in relevant part:

> When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors:
>
> 1. The then apparent merit or lack of merit in the claim.
>
> 2. The number and nature of offers made by the parties.
>
> 3. The closeness of questions of fact and law at issue.
>
> 4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.
>
> 5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.

5

> 6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

Fla. Stat. § 768.79(7)(b).

"[A]t least some of the factors enumerated in subsection [(7)(b)] of section 768.79, Florida Statutes . . . , bear on the question of whether the offer or demand for judgment was unreasonably rejected . . . ." *TGI Friday's, Inc. v. Dvorak*, 663 So. 2d 606, 613 (Fla. 1995). "Thus, in a given case, the court could justifiably reduce the amount of the attorney's fee to be assessed against a severely injured plaintiff who suffered an adverse verdict after rejecting a small settlement offer. By the same token, the court could reasonably conclude that a defendant with a small liability potential who rejected a large settlement offer should pay only a reduced fee even though the verdict ultimately exceeded the offer by more than twenty-five percent." *Id.*

**IV.   Analysis**

    **A.   Applicability of Fla. Stat. § 768.79**

Even though the parties do not contest the applicability of Fla. Stat. § 768.79, the undersigned will address this issue since the case sounds in admiralty and the Complaint sought declaratory relief. The undersigned recommends that this statute does apply.[7]

---

[7] At any rate, by not contesting this issue, Plaintiffs have waived any arguments to the contrary. *See McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1496 (11th Cir. 1990) ("A party normally waives its right to argue issues not raised in its initial brief.").

6

"Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law." *All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000). "But, when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." *Id.* (quotation marks omitted). In *All Underwriters*, the Eleventh Circuit held that when determining "whether there exists an established federal maritime policy addressing the specific issue of whether attorney's fees lie in the context of marine insurance contract disputes," "a district court may award attorney's fees pursuant to Fla. Stat. § 627.428 against an insurer . . . ." 222 F.3d at 1313–15. The undersigned recommends that the Court may also award attorney's fees pursuant to Fla. Stat. § 768.79 in the context of marine insurance contract disputes.

Furthermore, while Fla. Stat. § 768.79 provides that it applies to civil actions for damages, "a court should look behind the procedural vehicle used in a complaint to discern what true relief is sought." *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 883 (11th Cir. 2015).[8]

---

[8] Although the undersigned does not rely on unpublished opinions as precedent, they may be cited throughout this Report and Recommendation as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

Plaintiffs essentially sought monetary relief in the Complaint, so the undersigned recommends that Fla. Stat. § 768.79 applies in this case.

### B. Amount to be Awarded[9]

#### 1. Rates and Hours

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Id.* Although counsel "is not required to record in great detail how each minute of his time was expended[,] . . . counsel should identify the general subject matter of his time expenditures." *Id.* at 437 n.12.

Defendant's counsel have submitted billing records and affidavits in support of their requested fees. (Docs. 207-2 & 207-3.) Counsel further testified to the reasonableness of their fees at the hearing. Plaintiffs do not contest Defendant's claimed hourly rates.[10]

---

[9] In the Response, Plaintiffs argue that the Court should use the "all other relevant criteria" language in § 768.79(7)(b) to reduce the fee award based on Defendant's alleged lack of good faith in making the proposals for settlement. (Doc. 214 at 17–23.) However, "[i]t is evident from a plain reading of the statute and the rule that the issue of good faith is not a factor to be considered by the court in determining the amount and reasonableness of the fees and costs to be awarded." *Arce v. Wackenhut Corp.*, 146 So. 3d 1236, 1240–41 (Fla. Dist. Ct. App. 2014). Thus, the undersigned recommends that this argument be rejected.

[10] The Response states that "Evanston has . . . failed to carry its burden of establishing the reasonableness of its claimed hourly rates, and this Court should closely scrutinize the reasonableness of the hourly rates claimed by Evanston." (Doc. 214 at 9.) However, at the hearing Plaintiffs' counsel conceded that the hourly rates are reasonable.

In determining reasonable hourly rates, the Court considers "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *See Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Klein Glasser Park & Lowe P.L.[11] (the firm that represented Defendant at the district court level) and Fields Howell, LLP (the firm that represented Defendant at the appellate level) billed at the same hourly rates. Partners billed at an initial rate of $200.00 per hour, which later increased to $225.00 per hour and then $250.00 per hour. (Doc. 207-2 at 22, Doc. 207-3 at 3.) Associates billed at an initial rate of $165.00 per hour, which later increased to $185.00 per hour and then $200.00 per hour. (*Id.*) Paralegals billed at an initial rate of $80.00 per hour, which later increased to $90.00 per hour and then $105.00 per hour. (*Id.*) Based on the information counsel have provided as to the qualifications of the primary attorneys who handled the case (*see* Doc. 207-2 at 71–74, Doc. 207-3 at 111–14), the undersigned recommends that these are reasonable rates.

Reasonable hours expended are those that are not "excessive, redundant or otherwise unnecessary" and that reflect the attorney's "billing judgment." *See Norman*, 836 F.2d at 1301 (quotations omitted). The Court may conduct an hour-by-hour analysis to evaluate the reasonableness of the hours expended or, if

---

[11] This firm is the successor to Stephens Lynn Klein, etc., et al. (Doc. 207-2 at 2 n.1.)

appropriate, apply an across-the-board reduction.  *See Bivens v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008).

Plaintiffs argue that the billing records contain "many excessive, unnecessary, and duplicative time entries."  (Doc. 214 at 3.)  For example, on February 27, 2009, Joseph Lowe billed 1.20 hours for "Draft[ing] Rule 6(b) Motion."  (Doc. 207-2 at 26, Doc. 214-1 at 4.)  On March 5, 2009, Richard Jones billed 1.50 hours for "Research[ing] on Westlaw re: Rule 6(b) discovery time frames and the reasonableness of time given in case at hand."  (*Id.*)  That same day, Mr. Lowe billed 2.10 hours for "Prepar[ing] and fil[ing] Defendant Evanston Insurance Company's Motion to Enlarge Time to Answer Plaintiff's Discovery."  (*Id.*)  It appears that all of these entries refer to the March 5, 2009 motion filed by Defendant (Doc. 19).  This short motion was unopposed, and merely requested an extension to respond to discovery requests, but counsel billed almost five hours in connection with preparing the motion.[12]

In another entry noted by Plaintiffs, on January 14, 2010, Mr. Lowe billed 0.20 hours for "Receiv[ing] and review[ing] Magistrate Morris' Endorsed Order granting Motion to Withdraw."  (Doc. 207-2 at 33, Doc. 214-1 at 11.)[13]  The Endorsed Order is one line, reading "Endorsed Order granting [35] Motion to

---

[12] This motion was also arguably unnecessary.  *See* Fed. R. Civ. P. 29(b).

[13] Plaintiffs provide several other examples of Defendant's allegedly unreasonable billing.  (*See* Doc. 214-3.)  The undersigned does not necessarily agree with all of the examples, but overall agrees that the time requested should be reduced.

Withdraw." (Doc. 36.)  Although this is a small example, twelve minutes to review this order appears unreasonable on its face.  Furthermore, at the hearing, Mr. Lowe testified that for a five or six minute phone call, he would likely bill 0.3 hours (or eighteen minutes) because "this is a standard rate."  He explained that this factors in the interruption and recording of time involved.  He testified that this is accepted by his insurance company clients.  While the undersigned recognizes that the hourly rates requested are probably below market, and that Defendant is allegedly agreeable to this type of billing, the lodestar should reflect actual time, which may be discounted but not inflated.  *See Hensley*, 461 U.S. at 433–34 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

Plaintiffs also argue that the Court should "disallow an award of all fees incurred in connection with [Defendant's] initial premature and unsuccessful appeal," i.e., the appeal filed on July 23, 2010.[14]  (Doc. 214 at 5.)  The undersigned does not agree that all of the fees incurred in connection with the premature appeal should be disallowed, because it was probably reasonable to file the notice at the time, and some of the work appears to have been used on the second appeal. Nevertheless, the undersigned recommends that this is an additional factor justifying a reduction in Defendant's claimed fees.

---

[14] Plaintiffs allege that the amount of fees sought in connection with the unsuccessful appeal is $21,968.00.  (Doc. 214 at 8.)

11

Given the volume of the billing records provided, the undersigned will not recommend that the Court reduce the hours line-by-line. Instead, the undersigned recommends that the Court discount the total amount billed by the attorneys and paralegals by twenty percent.[15] Therefore, the undersigned recommends that a reasonable number of hours times a reasonable hourly rate is $259,335.20.

### 2.     Fla. Stat. § 768.79(7)(b) Factors

Fla. Stat. § 768.79(7)(b) provides that, in determining the reasonableness of an attorney's fee award, a court shall consider several factors. Two of the § 768.79(7)(b) factors are particularly relevant in this case: the "then apparent merit or lack of merit in the claim" and the "closeness of questions of fact and law at issue." Fla. Stat. § 768.79(7)(b)(1), (3). The resolution of this case essentially came down to the interpretation of two endorsements to an insurance policy. Upon review, it appears that reasonable minds could differ as to the interpretation of the endorsements. As evidenced by this Court's order granting summary judgment in favor of Plaintiffs, Plaintiffs' claim was not without merit, and the questions of law at issue were close questions. Moreover, similar to the example given by the Florida Supreme Court in *TGI Friday's, Inc.*, Defendant's proposals of $5,000 total were extremely low in comparison to its significant exposure, as evidenced by the amended final judgment in the amount of over $600,000. Thus, it was not at all unreasonable for Plaintiffs to reject these essentially nominal offers.

---

[15] Although Plaintiffs argue for a greater reduction, the undersigned recommends that Defendant's bills are not more than twenty percent excessive.

Defendant argues that, because this was a declaratory judgment action on an insurance policy, it "was an all-or-nothing proposition for both sides," and the amount of its offers was appropriate given its belief that it would prevail. (Doc. 217 at 9.) Defendant further argues that the Court's initial grant of summary judgment, and the Eleventh Circuit's subsequent reversal "[a]t best, . . . shows that Plaintiffs' position had *some* merit, but it shows plainly that [Defendant's] position was superior. At worst, this is a draw." (*Id.*) In addition, Defendant argues that other (7)(b) factors weigh in its favor. (*Id.* at 10.) The undersigned recommends that these arguments are unconvincing and that the most pertinent (7)(b) factors in this case clearly weigh in Plaintiffs' favor. Defendant's offers were nominal, its exposure was significant, Plaintiffs' position had arguable merit, and Plaintiff's rejection of the offers was all but assured. Thus, the undersigned recommends that the fee requested should be further reduced by twenty percent, leaving an amount of $207,468.16 for attorney's fees.[16]

### 3. Costs

"Prevailing parties are entitled to receive costs under Fed. R. Civ. P. 54(d), but a court may only tax costs as authorized by statute." *Beach-Mathura v. Am. Airlines, Inc.*, 571 F. App'x 810, 812 (11th Cir. 2014) (quotations omitted). 28 U.S.C. § 1920 provides in relevant part that a court may tax the following costs:

---

[16] The parties have not cited, and the undersigned has not found, any Florida District Court of Appeal cases on point that would change this analysis. However, given the dearth of Florida case law on this point, the undersigned does not recommend a reduction greater than twenty percent.

13

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case . . . .

Defendant seeks $4,624.60 in costs, $1,146.60 of which has already been approved by the Eleventh Circuit but not yet paid. (Doc. 207 at 13.) The remaining $3,478.00 Defendant seeks in costs is mainly for apparently in-house photocopies, and also for clerk's fees, service of summonses and subpoenas, transcripts, and witness fees. (Doc. 207-2 at 4–19.) Plaintiffs contest the amounts for photocopies, service of summonses and subpoenas, and witness fees, but not the amounts for clerk's fees and transcripts. As to the uncontested amounts, the undersigned recommends that both amounts, $910.00 for filing fees and $126.72 for transcripts, are recoverable.

The undersigned recommends that the $80.00 in fees for service of two subpoenas is recoverable. Plaintiffs argues the $80.00 is not recoverable because the subpoenas sought "to obtain records that were readily discoverable and ultimately produced on request." (Doc. 214 at 4.) However, Plaintiffs cite no legal authority to support this proposition. It appears reasonable to require the protection of a subpoena. The undersigned recommends that the $80.00 is recoverable.

As to the remaining disputed fees, the undersigned recommends that they are not recoverable. Plaintiffs argue that the $112.00 for witness fees is not

14

recoverable because the costs were incurred "for subpoenas served on opposing counsel in an improper, unsuccessful effort to take their depositions." (Doc. 214 at 4.) Defendant fails to respond to this argument. The undersigned recommends that the $112.00 for witness fees is not recoverable.

Regarding photocopying costs, which make up the bulk of the amount requested for costs, Plaintiffs argue that Defendant fails to provide support or evidence that the photocopies "were necessarily obtained for use in the case." (Doc. 214 at 4.) Defendant merely provided a daily summary of the charges and an affidavit stating that all costs "have been necessarily incurred in this case." (Doc. 207-2 at 2, 6–8.) The undersigned agrees that this summary and conclusory statement are insufficient and recommends that the $2,249.70 for photocopies is not recoverable. Although the per page copy rate is ascertainable, no other information is provided. *See* 28 U.S.C. § 1920; *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1335 (S.D. Fla. 2009) ("As the prevailing party alone knows the purpose of the copies, it cannot simply make unsubstantiated claims that copies of the documents were necessary. . . . Rather, the prevailing party must provide information regarding the purpose of copies charged so the court will be able to determine the purpose of the copies as well as whether the rates paid for copies were reasonable, and whether the copies made were related to the action at issue.").

Thus, the undersigned recommends that Defendant is entitled to recover $2,263.32 ($1,116.72 + $1,146.60 already approved) in costs.

## V.     Conclusion

For the reasons set forth above, the undersigned recommends that Defendant is entitled to judgment against Plaintiffs for a total of $209,731.48, which represents $207,468.16 in attorneys' fees pursuant to Fla. Stat. § 768.79 and $2,263.32 in costs pursuant to 28 U.S.C. § 1920.

Accordingly, it is respectfully **RECOMMENDED** that:

The Court enter an Order **GRANTING in part** the Motion (**Doc. 207**) in the amount of $209,731.48 and also stating substantially the following:

"The Clerk of Court is directed to enter judgment in favor of Defendant, Evanston Insurance Company, c/o Klein Glasser Park & Lowe PL, 9130 S. Dadeland Blvd., Two Datran Center, Suite 2000, Miami, FL 33156, and against Plaintiff American Home Assurance Company, as a Subrogated Insurer of Atlantic Marine Florida, LLC, c/o The Chartwell Law Offices, LLP, 200 S. Biscayne Blvd., Suite 300, Miami, FL 33131, in the amount of $209,731.48, representing $207,468.16 in attorney's fees and $2,263.32 in costs.  Post-judgment interest will accrue at the statutory rate set forth in 28 U.S.C. § 1961."

**DONE AND ENTERED** at Jacksonville, Florida, on November 24, 2015.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Harvey E. Schlesinger
Senior United States District Judge

Counsel of Record